The Honorable Marc L. Barreca
Hearing date: October 31, 2014
Hearing time: 9:30 a.m.
Response date: October 24, 2014
Chapter 7
Location: Seattle

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

In re

DONNA ALLEN,

                Debtor.

No. 14-14184

DECLARATION OF EDMUND J. WOOD IN SUPPORT OF MOTION FOR SALE OF PROPERTY FREE AND CLEAR OF LIENS

Edmund J. Wood, declares and states as follows:

1. I am the Chapter 7 Trustee herein, have testimonial knowledge of the facts set forth in this declaration and am competent to testify thereto. I make this declaration in support of the motion for sale of the estate's interest in the real property located at 9022 Dayton Ave N, Seattle, WA, free and clear of all liens.

2. The debtor filed the present Chapter 7 Bankruptcy Petition on May 29, 2014 and I was appointed as Chapter 7 Bankruptcy Trustee. The debtor listed an ownership interest in the real property located at 9022 Dayton Ave N, Seattle, WA. Accordingly, I engaged the services of Chad Tharp with Keller Williams Eastside to list the property for sale and on August 29, 2014 this Court approved the Application to appoint Chad Tharp and Keller Williams Eastside as real estate agent and broker for the estate. The property was listed for sale in the amount of $320,000.00 and an offer in the amount of $275,000.00 has been received. The present offer is the highest and best offer I have received.

**DECLARATION OF EDMUND J. WOOD IN SUPPORT OF MOTION FOR SALE OF PROPERTY FREE AND CLEAR OF LIENS - 1**

KATHRYN A. ELLIS, ESQ.
600 Stewart St
Suite 1300
Seattle, WA 98101
(206) 682-5002

3. The real property named above is encumbered by liens in the following priority and amounts:

| Creditor | Recording Date | Approximate Amount Due |
|---|---|---|
| King County Treasurer | N/A (Property Taxes) | $1,821.28 |
| Ameriquest Mortgage Securities Inc., Asset-Backed Pass-Through Certificates, Series 2003-11[1] | 11/19/2003 | $227,848.84 |
| Internal Revenue Service | 7/17/2008 | $17,562.62 |
| Internal Revenue Service | 8/7/2008 | $46,33.08 |
| Internal Revenue Service | 10/21/2008 | $6,700.65 |
| Internal Revenue Service | 4/13/2009 | $4,904.52 |
| Internal Revenue Service | 5/11/2009 | $21,668.07 |
| Internal Revenue Service | 7/20/2010 | $7,098.77 |

I seek authority to pay the first position Deed of Trust of Ameriquest Mortgage Securities Inc., Asset-Backed Pass-Through Certificates, Series 2003-11, and/or assigns, in full in the amount of approximately $227,848.84, plus *per diem*, in full satisfaction of its lien against this property. The Internal Revenue Service would receive the sum of approximately $17,829.88 in full satisfaction of its liens against this property after payment in full of the first position lien, and after all costs of closing, including real estate commissions, property taxes, excise taxes and other closing costs, together with a buyer's premium to the estate in the amount of $20,000.

4. A copy of the Purchase and Sale Agreement is attached hereto as Exhibit 1.

I CERTIFY UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF WASHINGTON THAT THE FOREGOING STATEMENT IS BOTH TRUE AND CORRECT.

DATED this 3rd day of October, 2014 at Seattle, Washington.

By: /s/ Edmund J. Wood
Edmund J. Wood

C:\Shared\KAE\Dox\Allen\9022_sale_dec.wpd

---

[1] Ocwen Loan Servicing LLC, servicer for Deutsche Bank National Truste Company, trustee for Ameriquest Mortgage Securities Inc., Asset-Backed Pass-Through Certificates, Series 2003-11.

**DECLARATION OF EDMUND J. WOOD IN SUPPORT OF MOTION FOR SALE OF PROPERTY FREE AND CLEAR OF LIENS - 2**

KATHRYN A. ELLIS, ESQ.
600 Stewart St
Suite 1300
Seattle, WA 98101
(206) 682-5002

DocuSign Envelope ID: 8217EA91-DF80-4EF8-971B-F0B131CBDD08
Authentisign ID: 43503988-EF18-4828-A831-FDA8632BFB82
Authentisign ID: DF11BE98-D730-4830-92B5-13F93AA81FA6

Date: 9/13/14

# RESIDENTIAL REAL ESTATE PURCHASE AND SALE AGREEMENT
## U.S. BANKRUPTCY COURT,
## WESTERN DISTRICT OF WASHINGTON AT SEATTLE

This AGREEMENT is entered into by and between the below named Buyer and the below named Seller, in his or her capacity as a United States Bankruptcy Trustee for the below named bankruptcy estate. Buyer agrees to purchase and the Seller agrees to sell the described property pursuant to the following terms and conditions:

BUYER(S) NAME: Ben Bergstrom

ADDRESS: 10533 North Park Ave. N. Seattle, WA. 98133

PHONE NUMBER: (253) 312-6325

SELLER NAME: Edmund J. Wood, CHAPTER 7 BANKRUPTCY COURT TRUSTEE FOR:

ALLEN # 14-14184      [BB] 9/25/2014

PROPERTY ADDRESS: 9022 Dayton Ave. N. Seattle, WA. 98103   [ejw]

PURCHASE PRICE: ~~$250,000~~ $275,000 TWO HUNDRED SEVENTY FIVE DOLLARS

LEGAL DESCRIPTION: ATTACHED AT EXHIBIT "A" HERETO.

CLOSING DATE: ☐ Cash- 7 days from Court Approval    ☒ Financed- 14 days from Court Approval

SELLING FIRM: COMPANY: Windermere Real Estate FN.

ADDRESS: 12250 Greenwood Ave. N.

CITY: Seattle    STATE: WA.

BROKER: Andrew Kim    LAG # 84640

PHONE: (206) 302-8331    FAX: (206) 361-6943

EMAIL: Andrew_Kim@windermere.com    OFFICE EMAIL: officedocs@windermere.com

LISTING FIRM: KELLER WILLIAMS REALTY
11109 SLATER AVE NE, #200
KIRKLAND, WA 98033

Buyer(s) Initials [BB]  Date 9/13/2014  Initial ___ Date ___    Seller Initials [ejw]  Date ___

Exhibit B
Page 1 of 10

DocuSign Envelope ID: 8217EA91-D580-4EE8-971B-F0B131CBDD08
Authentisign ID: 754925-AB31-FDA0232FB02971B-F0B131CBDD08
Authentisign ID: DF11BE96-D730-4830-92B6-13F93AA81FA6

Date: 9/13/14

BROKER:        CHAD THARP
               PHONE:    888-228-2081
               EMAIL:    offers@chadtharp.com

EARNEST MONEY: $ 1,500         EARNEST MONEY HELD BY: Selling Firm

FORM OF EARNEST MONEY:   ☐ Wire Transfer   ☒ Personal Check   ☐ Cashiers Check

1. **No representations or Warranties.** Seller is a bankruptcy trustee and therefore he/she has no personal knowledge regarding the property. There are no representations or warranties regarding the property or its condition. All sales are "AS IS, WHERE IS" and without any representation or warranties of any kind expressed or implied. Listing agent makes no representations or warranties expressed or implied regarding the property.

2. **Earnest Money Forfeiture.** In the event Buyer fails, without legal excuse, to complete the purchase of the property, the earnest money deposit made by Buyer shall be forfeited to Seller as the sole and exclusive remedy available to Seller for such failure. If the earnest money deposit is greater than five (5) percent of the purchase price, only that portion of the earnest money deposit equal to five (5) percent of the purchase price shall be forfeited to Seller. By their initials below, Buyer and Seller specifically acknowledge that they have read the preceding provision regarding forfeiture or the earnest money and agree to it.

   Buyer (s) Initials: BB    9/13/2014           Seller Initials: EJW

3. **Financing.** This offer is ☐ or ☐ is not conditioned upon Buyer obtaining a ☒ Conventional loan ☐ FHA loan ☐ VA loan ☐ USDA loan ☐ FHA 203k loan.

   All transactions with financing must receive conditional approval and submit proof within 30 days of initial signing of this Agreement that loan approval is only pending appraisal and updated income and asset documents. Updated conditional approvals must be submitted to the trustee every 30 days. Financed transactions must close within 14 days of Buyer's receipt of court and/or short sale approval. All cash transactions require Buyer submit updated proof of funds every 30 days and must close within 7 business days of court approval or lien holder approval whichever occurs last.

   Buyer represents that Buyer has sufficient funds to close this sale in accordance with this Agreement, and is not relying on any contingent source of funds or gifts unless expressly set forth elsewhere in this Agreement.

4. **Down Payment/Loan Application.** Buyer agrees to pay $ 62,500 down and to make a loan application, in good faith, within seven (7) days after initial signing of this Agreement, for a market rate loan to pay the balance of the purchase price. If application is not made within seven (7) days of initial signing, Seller may retain the earnest money and this Agreement shall terminate. Buyer shall obtain a pre-approval letter through lender of Trustee's choice. Buyer agrees to provide proof of funds for down payment, closing cost and trustee's fee.

   Buyer (s) Initials: BB  Date 9/13/2014  Initial _____ Date _____   Seller Initials: EJW  Date _____

Page 2 of 10

DocuSign Envelope ID: 8217EA91-D580-4EE8-971B-F0B131CBDD08
Authentisign ID: 43305988-LF18-4925-AB31-F0A0E326FB02
Authentisign ID: DF11BE96-D730-4830-92B5-13F93AA81FA6

Buyer agrees to pay all financing and purchase costs incurred by Buyer.

5. **Financing Deadline/Seller Termination Notice.** This Agreement shall terminate upon the expiration of 30 days from initial signing of this Agreement, if Buyer has not given notice that Buyer has made application for financing and either provided a Loan Commitment letter or waived the financing condition. The loan commitment may be subject to final appraisal review. Appraisal shall be ordered within 3 days of receipt of lien holder approval.

6. **Loan Costs.** Seller will not be responsible for, or credit any loan costs except such portion of Buyer's loan cost that Buyer is prohibited from paying pursuant to applicable FHA and VA regulations.

7. **Fees.** Buyer acknowledges that this transaction requires the payment of a short sale negotiation fee to Attorney of Seller's choice and the Bankruptcy Buyer Premium fee which must be paid at escrow as a buyer's closing cost at closing. Seller establishes a Short Sale Negotiation Fee in the amount of 1.5% of the final gross sales price of the property (minimum of $2500). Seller is also required by the Bankruptcy Code to charge a Buyer's Premium which is calculated according to the property price. The Buyer's Premium is subject to a court ordered minimum which is outlined in Purchase and Sale addendum B attached.

Buyer acknowledges and agrees to pay the sum of $176.00 as non-refundable fee to the United States Bankruptcy Court for Seller's filing of a motion to approve sale free and clear of liens. In the event that the transaction closes, Buyer will be credited at closing for this fee. In the event that the transaction does not close, for any reason, the fee is considered non-refundable and will not be credited or refunded to Buyer.

8. **Inspections.** Buyer has five (5) days from the date of initial signing to inspect the premises and provide written bids, if necessary from a licensed contractor to justify value. Inspection contingency shall be deemed waived at the close of business five (5) days from initial signing unless Buyer provides Seller with written notice that the property is not acceptable. Notwithstanding the foregoing, if Buyer's lender requires an additional inspection, Seller agrees to permit such inspection. Buyer will pay all costs and fees associated with such inspections and Seller shall have no liability therefore. Buyer will return the property to its original condition after said inspection or test. It is Buyer and/or the selling agent's responsibility to verify and contact the utility companies in order to turn on the utilities for inspection. In the event that a septic inspection is required, Buyer is responsible for hiring and paying for septic inspection including acquiring any and all required certificates. Buyer agrees to hold Seller, its officers, brokers and attorneys harmless from all claims arising out of Buyer's inspection or testing of the property.

9. **Feasibility Study.** If the Purchase and Sale Agreement is subject to a feasibility study and the sale does not close because of any contingency which Buyer does not waive, Buyer shall provide Seller a copy of every study, report, analysis or appraisal regarding the property prior to Seller returning any earnest money or promissory note.

10. **Defects.** Buyer represents to Seller that Buyer will fully inspect the property and Buyer assumes the responsibility and risks of all defects and conditions, including such defects and conditions, if any, that cannot be observed by casual inspection. Seller makes no representations or warranties expressed or implied of any kind with respect to, among other things: (a) the dimension, size or acreage of the premises; (b) any applicable governmental laws or regulations; (c) the availability of water, sewer or other utilities; (d) the environmental condition of the property; or (e)

Buyer (s) Initials_____ Date 9/13/2014  Initial_____ Date_____  Seller Initials_____ Date_____

DocuSign Envelope ID: 0217EA91-DF89-4E58-971B-F0B131CBDD08
Authentisign ID: F34925-AB31-FDA0E32E4D02

Authentisign ID: DF11BE96-D730-4830-92B5-13F93AA81FA6

Date: 9/13/14

the existence or non-existence of urea-formaldehyde, asbestos, mold or fill material.

11. **Personal Property.** Seller is a bankruptcy trustee and has no knowledge of whether there is any leased personal property on the premises. Buyer shall make an appropriate investigation to determine whether there is any leased property on the premises which, if present, is not included in the sale. The debtor(s) may claim personal property on the premises, such as, but not limited to, non built-in appliances, drapes, curtains, etc., as exempt property until the property in transferred to Buyer. In such instance, the personal property is not included in the sale.

12. **Hazardous Waste.** Seller is a bankruptcy trustee and has no knowledge of the presence of any hazardous waste on the property, including, but not limited to, petroleum products, urea-formaldehyde, lead paint, mold, asbestos, or drug manufacturing. Seller has no knowledge of any violation of law, environmental regulation or ordinance with respect to the property. Buyer understands and agrees that any knowledge about the condition of the property held by any party including, but not limited to, Listing Broker, debtor, debtors' employees and agents, shall not be imputed to the trustee or the estate. Buyer hereby assumes all risk and costs related with the presence of hazardous waste and environmental condition of the property. Buyer hereby waives any and all rights of contribution, indemnity and/or reimbursement with respect to any and all defects, including but not limited to, hazardous waste, abatement and environmental condition.

13. **Possession.** Buyer shall be entitled to possession upon closing unless otherwise agreed upon in writing.

14. **Closing.** "Closing" means the date on which all transfer documents are recorded with the County and the sale proceeds are available to the Seller. Buyer agrees that Seller will not clean the interiors or exteriors of any structures. The sale is "as is, where is".

15. **Escrow Agent.** The transaction shall be escrowed by Escrow Company of Seller's choice. Buyer will be informed of contact information for Escrow Company within 2 days of initial signing of this Agreement.

16. **Condition of Title.** Unless otherwise specified in this Agreement, title to the property shall be marketable at closing. The following shall not cause title to be unmarketable: rights, reservations, covenants, conditions and restrictions presently of record and general to the area, including but not limited to zoning, easements and encroachments not materially affecting the value of or unduly interfering with Buyer's intended use of the property, and reserved oil and/or mineral rights. Monetary encumbrances not assumed by the Buyer shall be removed from the title by the Seller on or before closing. If for any reason the Seller is unable to transfer marketable title to the Buyer then this Agreement is null and void, the Buyer's earnest money, if any, shall be returned and the Seller shall be released of all obligations hereunder.

17. **Title Insurance.** Seller shall provide a standard form of title insurance from a title insurance company of Seller's choice. Seller authorizes lender or closing agent, at Seller's expense, to apply for a standard form buyer's policy of title insurance with homeowner's additional protection and inflation protection endorsement, if available at no additional cost. The preliminary commitment therefore, and the policy to be issued, shall contain no exceptions other than general exclusion and exceptions in said standard form. If title cannot be made so insurable prior to closing, the earnest money shall be refunded to the Buyer, less any unpaid costs described in paragraph 22 hereof,

Buyer (s) Initials _JJJ_ Date _9/13/2014_ Initial _____ Date _____ Seller Initials _____ Date _____

Page 4 of 10

DocuSign Envelope ID: 8217EA91-D589-4EE8-971B-F0B131CBDD08
Authentisign ID: f549f6-AB31-FDA8E32E7602
Authentisign ID: DF11BE96-D730-4830-92B5-13F93AA81FA6

and this Agreement shall thereupon be terminated. Buyer shall have the right to to waive such defects or encumbrances and shall hold all parties harmless from such election.

18. **Title Transfer.**   Title shall be transferred by the bankruptcy trustee's quit claim deed.

19. **Closing Costs and Pro-ration.**   Buyer and Seller shall each pay one-half of the escrow fee.   In the event that the underlying lien holder only pays for a portion of Seller's title and escrow fee, it is Buyer's responsibility to pay for any shortages.   Seller shall pay excise tax.   Property taxes for the current year shall be pro-rated.   Buyer shall pay for any remaining fuel or oil in the propane/oil tank, if applicable.   Buyer is responsible for any outstanding pre-closing utility bills, delinquent HOA dues, sub-escrow fees and escrow shortages of any kind.

20. **Sale Information.**   After approval by the United States Bankruptcy Court, Listing Broker is authorized to report this Agreement including price and all terms to the Northwest Multiple Listing Association or such other applicable listing association that publishes it to its members, financing institutions, appraisers and anyone else related to the sale. Buyer and Seller authorize lender, closing agent, appraiser, title insurance company or other party related to the sale, to furnish upon request any and all information, documents concerning the status, progress and final disposition of financing, appraisal, closing, title condition, and any other matter concerning this sale, including buyer's credit report to listing and/or selling broker.

21. **Notices.**   Unless otherwise specified, any notice required or permitted in, or related to, this Agreement (including any addenda hereto) must be in writing, signed by any one Buyer or Seller (including either husband or wife) and received by Listing Broker who, *for this limited purpose, shall be the broker of both parties).*   Any time limit in or applicable to a notice shall commence on the date following receipt of the notice by the Listing Broker, unless that date is Saturday, Sunday or holiday, in which event it will commence on the following business day.   Buyer must keep Listing Broker advised of their whereabouts to receive prompt notification of a receipt of notice.

Listing Broker has no responsibility to advise of receipt of a notice beyond either phone or email or causing a copy of the notice to be delivered to the Selling Broker via the contact information provided in this Agreement.

22. **Earnest Money Receipt and Disbursement.**   Listing Broker shall acknowledge receipt of Buyer's earnest money in the form set forth above.   Earnest money shall be held in Closing Agent's pooled trust account (with interest paid to the Washington Housing Fund or such other relevant fund in accordance with applicable laws).   Earnest money to be deposited within three (3) days after court approval.

23. **Earnest Money Deposit.**   Listing Broker will deposit any earnest money check within three (3) days after receipt or initial signing, whichever occurs later.   If the earnest money is held by Selling Broker and is over $10,000, it shall be deposited into an interest bearing trust account in Selling Broker's name provided that the Buyer completes an IRS for W-9. Any interest will be paid to Buyer after deduction of bank charges and fees. Buyer agrees to reimburse Selling Broker for bank charges and fees in excess of the interest earned, if any. If Buyer does not complete an IRS Form W-9 before Selling Broker must deposit the earnest money or if the earnest money is $10,000 or less, any interest on the earnest money shall be deposited into the Housing Trust Fund Account. Selling Broker may transfer the earnest money to Closing Agent.   If all or part of the earnest money is to be refunded to Buyer and any Buyer

Buyer (s) Initials _JJJ_ Date _9/13/2014_ Initial _____ Date _____ Seller Initials _____ Date _____

Page 5 of 10

DocuSign Envelope ID: 8217EA91-DF89-4EF8-971B-F0B131CBDD08
Authentisign ID: 45A59706-LF-824926-AB31-FDA8832E4D82
Authentisign ID: DF11BE96-D730-4830-92B6-13F93AA81FA6

closing or loan costs remain due and unpaid, Listing Broker or Closing Agent may deduct and pay them therefrom.

24. **Seller Conditions.** This Agreement is subject to approval by the Bankruptcy Court. The trustee does not always have access to a title report or information with respect to the tax consequences of a sale when a purchase offer is made. Accordingly, the purchase agreement is conditioned on: (1) The trustee obtaining an opinion from an accountant that the proposed sale will not result in adverse tax, and (2) If the trustee in his or her sole discretion deems it appropriate, the court authorizing an award to the estate of reasonable fees and expenses pursuant to 11 U.S.C Section 506 (c) if there are liens against the property.

25. **Subsequent Offers.** This agreement is subject to approval and order of the U.S. Bankruptcy Court. The Bankruptcy Court approval and Order allowing sale shall be deemed mutual acceptance. Seller will apply to the Bankruptcy Court for approval of the sale set forth herein as soon as reasonably practicable. The Bankruptcy Court hearing will generally take place within six to eight weeks of initial signing. If Seller receives higher and/or stronger offer to purchase the property prior to or at the Bankruptcy Court hearing, Seller may accept such offer contingent upon approval of the Bankruptcy Court and request that the court accept the better offer. Buyer understands that this clause is an explanation of the law and removal of this clause from this Agreement will not alter the bankruptcy law. Seller agrees, however, to follow the procedure set forth in the next paragraph allowing for Buyer to attempt to match a competing offer.

26. **Competing Bids.** If this Agreement is the first agreement Seller has signed regarding the subject property, Seller, subject to court approval, hereby agrees that Buyer will be given the opportunity to match the proposed purchase price and terms of any subsequent offer. Seller shall provide Buyer notice of receipt of a subsequent offer. Seller's notice shall be in writing and state the subsequent offer terms that Buyer must meet or exceed. Within 48 hours of receipt of Seller's written notice of subsequent offer, Buyer must notify Seller of their intent to match the subsequent offer. Price increases must be in increments of no less than one percent of the original offer. If an offer is received within 48 hours of the court hearing date, the court may have the proposed purchasers submit in writing their last, highest and best offers at or following the hearing to approve the sale.

27. **Commission.** A real estate commission will be paid to Buyer's broker at closing in accordance with the listing agreement and pursuant to an order of the Bankruptcy Court. Such commission is disclosed on the MLS listing and may not be reduced by lien holder or Bankruptcy Court.

28. **Agreement To Purchase And Time Limit For Acceptance.** Buyer offers to purchase the property on the above terms and conditions. Seller has until the close of business on the date set forth below to sign this offer. The initial signing is not effective until a signed copy hereof is actually received by the office of the Listing Broker. If this offer is not so signed, it shall lapse and the Selling Agent shall refund the earnest money to Buyer.

29. **Counteroffers.** If a party makes a counteroffer the other party shall have until 9:00pm on the second day following receipt of the counteroffer agree. Agreement on counteroffer terms is only effective by delivering the signed counteroffer to the office of the Listing Broker.

30. **Resale Certificate.** If the subject real property is a condominium, Buyer agrees to order and deliver a Resale

Buyer (s) Initials [JJJ] Date 9/13/2014 Initial _____ Date _____ Seller Initials [DS EJM] Date _____

Page 6 of 10

DocuSign Envelope ID: 8217EA91-D589-4EF8-971B-F0B131CBDD08
Authentisign ID: 45939786-CF184925-AB31-F0A0832E4D82
Authentisign ID: DF11BE96-D730-4830-92B6-13F93AA81FA6

Certificate to their lender and Seller within ten (10) days after lien holder approval of this Agreement by all parties. **Resale Certificate is conclusively deemed approved by Buyer unless Buyer gives notice of disapproval within five (5) days following receipt.** If Buyer disapproves said Resale Certificate, this agreement shall terminate and the earnest money shall be refunded to Buyer.

31. **Disclosure Statement.** Seller is a bankruptcy trustee and exempt from providing a real property transfer disclosure statement and therefore no such statement will be provided.

32. **Lead Paint.** Buyer is required to sign the lead-based paint addendum if the property was built prior to 1987.

33. **Signs, Lockboxes, Keys and Occupancy.** Signs and lockboxes will typically be removed within 7 days after closing. If they are not removed within 7 days, please notify Listing Brokerage. Do not remove them. If anything is lost or stolen, Selling Broker agrees to reimburse Listing Broker for the cost of such items. If Buyer needs to remove the doorknob to rekey, Buyer shall leave the lockbox and sign beside the front door. Buyer's Broker must not allow Buyers to move into the property until escrow has closed. Buyer shall not occupy the property or move personal items into the property for any reason prior to notification from the escrow company that the Trustee's Deed has been recorded. Any early occupancy by Buyer will be cause for immediate termination of escrow, at Seller's unilateral discretion and loss of Buyer's earnest money, along with any civil charges, if necessary. A proposal for early occupancy requires prior court approval and is subject to a month-to-month lease agreement. Request for early occupancy must be given to the listing agent directly. Buyer should re-key property immediately after closing due to the possibility of other people having copies of keys. Buyer shall be responsible for obtaining all keys for the property, including but not limited to, the front door, common area keys, passes, FOB's, garage door openers and mailbox keys.

34. **Agency Disclosure and Receipt of Agency Pamphlet.** Buyer acknowledges receipt of the pamphlet entitled "The Law of Real Estate Agency". The Department of Licensing requires real estate licensees (Brokers) to disclose to the Buyer and Seller in a real estate transaction whether the licensee represents Seller, Buyer, both Buyer and Seller, or neither. The Listing Broker represents Seller. The Selling Broker represents:

    ☐ Seller    ☒ Buyer [*BB*]    ☐ Neither    ☐ Both        Selling Broker Initials _____
    Buyer Initials _____                                        Buyer Initials _____

35. **Termination of Contract.** Seller has the right to terminate the contract at any time upon written notice to Buyer. Buyer shall be entitled to refund of Earnest Money deposit less any expenses incurred by Seller or Listing Broker.

36. **Affiliated Business Relationships.** Buyer acknowledges that Seller and Selling Broker may have affiliated business relationships with certain lenders or mortgage companies, escrow and title companies, attorneys and other real estate professionals. Buyer hereby waives any objection to Seller's use of preferred or affiliated businesses in order for Seller's unique transactions to close smoothly.

Buyer (s) Initials [*BB*]  Date 9/13/2014  Initial _____ Date _____    Seller Initials [*EJW*] —DS Date _____

DocuSign Envelope ID: 8217EA21-DF80-4EE8-971B-F0B131CBDD08
Authentisign ID: 734697B8-EF13-4928-AB31-F0A8E32E4582
Authentisign ID: DF11BE96-D730-4830-92B5-13F93AA81FA6

Page 8 of 10          Date: 9/19/14

37. **Lienholder(s) Approval.** Buyer acknowledges that this transaction is subject to approval by lien holder(s). Buyer acknowledges such approval may be conditioned on modification of the terms of this Agreement.

38. **Utilities.** Seller has no knowledge of which utilities serve the property. Buyer must verify presence of gas, water, sewer, electric, propane, cable, etc and which companies provide service. Buyer hereby waives escrow's payment of all utilities except those required to clear to title.

39. **Applicable Law, Jurisdiction and Venue.** This Agreement shall be governed by and construed in accordance with the laws of the State of Washington. Jurisdiction and venue for any proceeding involving this Agreement shall be in U.S. Bankruptcy Court for the Western District of Washington. Likewise, the Buyer and Selling Broker acknowledge that the Seller and Listing Broker are retained under U.S. Bankruptcy Court order and any conflicts regarding representation, listing, contract and transaction must be resolved exclusively in that court. Buyer agrees to indemnify and hold Seller and Listing Broker harmless for any and all claims related to or arising out the United States Bankruptcy Court and/or lender not approving the Buyer's offer.

40. **Addenda.** The following addenda are attached hereto and made part of this Agreement:

☐ None    ☐ Legal description - Exhibit "A"    ☒ Statutory Trustee Fee- Exhibit "B"    ☐ _____

Seller: Edmund J. Wood, Chapter 7 Trustee for ALLEN      # 14-14184

*Edmund J. Wood*      Date: _____

Buyer Signature: *Ben Bergstrom* 9/13/2014 1:54:10 PM      Date: 9/13/2014

Buyer Phone and Email: _____

Buyer Signature: _____
Date: _____

Buyer Phone and Email: _____


Buyer (s) Initials [BB]   Date 9/13/2014   Initial _____ Date _____      Seller Initials [EJW] Date _____

Page 8 of 10

DocuSign Envelope ID: 9217EA91-D580-4E58-971B-F0B131CBDD08
Authentisign ID: 45A03F63-EF18-4528-AB31-FDA0E32E1D82
Authentisign ID: DF11BE96-D730-4830-92B5-13F93AA81FA6

Date: 9/13/14

## ADDENDUM A- LEGAL DESCRIPTION

Buyer (s) Initials: *BB* Date: 9/13/2014    Initial _____ Date _____    Seller Initials: *EJW* Date _____

DocuSign Envelope ID: 9217EA91-DF8D-4EF8-971B-F0B131CBDD08
Authentisign ID: F54926-AB31-FDA8232-F5829 71B-F0B131CBDD08
Authentisign ID: DF11BE96-D730-4830-92B5-13F93AA81FA6

Date: 9/13/14

## ADDENDUM B- BANKRUPTCY TRUSTEE FEE SCHEDULE

Seller, as Bankruptcy Trustee, must uphold certain duties to the Court and attempt to provide creditors of the Bankruptcy Estate with some benefit of the property sale. The proceeds of the sale are allocated to secured creditors. Seller charges a Buyer premium to be allocated to the unsecured creditors as a benefit of the sale. The Buyer's premium is necessary because the United Bankruptcy Code provides that there must not be inconsequential benefit to the estate. Some courts go further and require a meaningful distribution to creditors of the bankruptcy estate. The Buyer's Premium shall be paid in cash at closing which is in addition to the purchase price.

The amount of the Buyer's Premium shall be calculated based on the Purchase Price as follows:

- **No less than $20,000 for all sales**
- 5% of any amount in excess of $50,000

All Trustee Buyer's Premium fees are subject to change at any time for any reason.

Buyer (s) Initials [BB] Date 9/13/2014 Initial _____ Date _____ Seller Initials [EJW-DS] Date _____

Page 10 of 10